## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Randi BETHEL, Anita FETT, and Heather THOE | Case No. 23-cv-481 |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| LAKES AND PINES COMMUNITY ACTION COUNCIL, INC., | |
| Defendant. | |

Plaintiffs Randi Bethel, Anita Fett, and Heather Thoe, for their Complaint against Defendant Lakes and Pines Community Action Council, Inc. ("Lakes and Pines"), state and allege as follows:

### **INTRODUCTION**

1.     This lawsuit is necessary to remedy intentional religious discrimination by Defendant Lakes and Pines. Rather than easily accommodate the three Plaintiffs' sincere religious beliefs, Lakes and Pines refused to consider accommodations and advanced pretextual concerns to terminate Plaintiffs.

2.     Plaintiffs Heather Thoe, Anita Fett, and Randi Bethel worked to help people in need. For years, these women served low-income households and individuals through social programs, including providing and facilitating housing assistance, school readiness programs, grocery delivery for seniors, and access to the Supplemental Nutrition Assistance Program (SNAP) and Minnesota's health insurance marketplace, MNsure. These programs became even more critical during the height of the COVID-19 pandemic.

3.      But when Ms. Thoe, Ms. Fett, and Ms. Bethel sought religious accommodations, Lakes and Pines summarily denied them without actually considering their requests and without any lawful justification. Instead of engaging in a good-faith process to consider their accommodations, it simply fired them.

4.      When Lakes and Pines announced that its employees would be required to be vaccinated with a COVID vaccine, it anticipated that some employees would have religious objections and it knew that the law required it to offer reasonable accommodations for such employees. Lakes and Pines therefore told employees that they could apply for religious exemptions, and even explained how it could accommodate employees with religious objections.

5.      But rather than complying with its legal obligations, Lakes and Pines simply used exemption applications to identify which employees it would fire. When Lakes and Pines received a religious exemption application from an employee, it did not engage in an interactive process with the employee or assess whether an accommodation was possible, as the law requires. Instead, Lakes and Pines immediately began advertising for a replacement employee.

6.      This systematic conduct violated the law. Lakes and Pines knew and knows that when its workplace requirements conflict with an employee's sincerely held religious beliefs, Title VII requires it to interact with the employee in good faith to identify and offer available reasonable accommodations.

7.      Aware of its legal obligations, but not refusing to comply, Lakes and Pines created a sham paper trail that gave the appearance of an "interactive process." For

example, when Lakes and Pines informed each of the Plaintiffs she would be fired, it labeled this meeting as "begin[ning] the interactive process."

8.      In reality, Lakes and Pines never considered and never offered any religious employee an accommodation. Instead, it summarily denied Ms. Thoe's, Ms. Fett's, and Ms. Bethel's requests and fired them.

9.      This case is the necessary consequence of Lakes and Pines' unlawful actions and is Plaintiffs' final avenue for redress.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this action arises under the laws of the United states, including Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000(e), *et seq.*. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C § 1367.

11.      Venue is proper in the United States District Court for the District of Minnesota under 28 U.S.C. § 1391(b), as all or a substantial part of the events giving rise to the claims occurred within this District.

12.      This Court has personal jurisdiction over Lakes and Pines as it is incorporated in, and has its principal place of business in, the state of Minnesota.

## THE PARTIES

13.      Defendant Lakes and Pines is a Minnesota nonprofit organization with its principal place of business at 1700 Maple Avenue East, Mora, Minnesota 55051. Lakes and Pines oversees state and federal grant-funded programs.

14.     At all times relevant to this Complaint, Lakes and Pines had more than 15 employees.

15.     Plaintiff Heather Thoe is a former employee of Lakes and Pines. From May 2019 until November 2021, Ms. Thoe worked as a Program Support Specialist at Lakes and Pines.

16.     At all relevant times, Ms. Thoe was and is a citizen of Minnesota and a resident of Kerrick, Minnesota.

17.     Plaintiff Anita Fett is a former employee of Lakes and Pines. Ms. Fett was first hired by Lakes and Pines in 1990. In 1996, Ms. Fett left her position at Lakes and Pines for personal reasons and returned to Lakes and Pines in 2000, where she worked in the Community Services program until November 2021.

18.     At all relevant times, Ms. Fett was and is a citizen of Minnesota and resident of Kerrick, Minnesota.

19.     Plaintiff Randi Bethel is a former employee of Lakes and Pines. From November 2020 until November 2021, she worked for Lakes and Pines as a Program Specialist.

20.     At all relevant times, Ms. Bethel was and is a citizen of Minnesota and a resident of Cedar, Minnesota.

## LAKES AND PINES MANDATES COVID VACCINES AND DISCRIMINATES AGAINST RELIGIOUS EMPLOYEES

21.     On September 20, 2021, Lakes and Pines adopted a "Mandatory COVID-19 Vaccination Policy," that required employees to be vaccinated against COVID "as a term

4

and condition of employment." By its terms, the policy applied to all employees "regardless of whether they work on-site or remotely."

22.     The stated purpose of the COVID Vaccine Policy was to protect "employees and their families; customers and visitors; and the community at large."

23.     The Policy stated that employees were allowed to apply for an exemption based on a "qualifying medical condition[]" or "a sincerely held religious belief."

24.     Lakes and Pines acknowledged that it could accommodate employees who received exemptions. Such employees would be required to "produce a negative COVID test result weekly on Fridays" and this weekly testing was the "employees' responsibility to schedule and pay for." These employees would also be required to wear a mask, social distance, and follow other "preventative guidance."

25.     According to the Policy, employees that failed to comply with its requirements would be placed on "unpaid leave until their employment status is determined by the human resources department."

26.     Along with the Policy, Lakes and Pines created a new "Lakes and Pines Request for Religious Exemption from COVID-19 Vaccine Form."

27.     This form facially discriminated against employees who have sincere religious beliefs that are not affiliated with a religious institution or denomination.

28.     The form required employees to identity their "Religious Organization" and "Name of Religious Leader and Title," and it required employees to obtain a signed statement from a religious leader certifying that "the above-named observant is a member of my religious organization in good standing," and "supporting the basis of the observant's

faith/beliefs which are contrary to the practice of vaccination or use of the COVID-19 vaccination."

29.    Although Lakes and Pines promised employees that the "Human Resources Department will carefully review all requests" for religious exemption, it did not keep that promise.

30.    Lakes and Pines never intended to grant any accommodations.

31.    Instead, Lakes and Pines never gave its Human Resources Department any authority to consider religious accommodation requests. Instead, its Executive Director Robert Benes took over the process of considering exemption requests.

32.    No one at Lakes and Pines ever "carefully reviewed" religious accommodation requests. In fact, Mr. Benes had decided in advance that Lakes and Pines would deny any religious accommodation requests that it received.

33.    When Lakes and Pines received a religious accommodation request related to the Policy, it immediately began advertising to find a new worker to fill the position of the person who submitted the request. Mr. Benes then directed that the request be summarily denied, without genuine consideration.

34.    In total, Lakes and Pines received five requests for religious accommodations asking for an exemption from the Policy's COVID vaccination requirement.

35.    After Lakes and Pines received these five accommodation requests—and thus, after it knew which employees were seeking religious accommodations and their positions—Lakes and Pines purported to conduct a company-wide analysis of "each agency position to determine if accommodations were possible within each position that

would allow staff to continue to perform" their jobs without undue hardship.

36.    But this "analysis" was a sham. Mr. Benes had instructed department heads to begin looking for replacements for any employee that chose not to get vaccinated before receiving employees' requests.

37.    Mr. Benes' sham "analysis" was created *after* receiving all five accommodation requests. The results were not based on any legitimate criteria. Instead, the results were chosen to find that Lakes and Pines could only accommodate jobs and departments where no applicant for religious exemption worked to ensure no accommodation requests were granted.

38.    Lakes and Pines denied every single religious accommodation request that its employees submitted without ever analyzing the real risks of transmission or whether an undue hardship existed.

39.    Thus, Lakes and Pines has never allowed any religious employee to use its announced accommodation plan.

### LAKES AND PINES CREATES AN UNLAWUL ACCOMMODATION PROCESS, DENIES ACCOMMODATIONS, AND FIRES PLAINTIFFS

#### Heather Thoe

40.    Ms. Thoe started work at Lakes and Pines in May 2019 as a Program Support Specialist. In this position, Ms. Thoe handled client intake and helped individuals complete and submit applications for housing, energy, medical assistance, and other programs.

41.    Throughout her employment at Lakes and Pines, Ms. Thoe received positive reviews and feedback regarding her performance.

42.    From March 2020 until June 2020, Ms. Thoe's job was fully remote. She did not physically come to Lakes and Pines' offices except at the request of a client or to drop off or pick up paperwork.

43.    Lakes and Pines implemented a system through which Ms. Thoe and other employees were able to pick up and drop off paperwork without ever going into the office.

44.    Ms. Thoe is also a Christian who believes in the sanctity of human life, that abortion is morally wrong, and that for her to support or benefit from it in any way would be a sin against God.

45.    After Lakes and Pines announced its COVID vaccination requirement, on October 28, 2021, Ms. Thoe requested a religious accommodation using the form provided by Lakes and Pines. In her request, Ms. Thoe explained her belief that "it would be a violation of my faith" to receive "any vaccines" whose "study or creation" involved tissue or cells from aborted fetuses, as COVID vaccines did.

46.    Ms. Thoe did not complete the "Religious Organization Statement Form" in her original submission because she is not a member of a local congregation.

47.    On or around November 1, 2021, Ms. Thoe had a telephone call with Tina Hamilton, Lakes and Pines' Human Resources Director, in which Ms. Hamilton stated that Lakes and Pines would not process Ms. Thoe's accommodation request until she completed the "Religious Organization Statement Form."

48.    On November 1 or November 2, 2021—before Ms. Thoe submitted the religious organization form, and just three or four days after she submitted her accommodation request—Ms. Thoe noticed that Lakes and Pines was advertising on

Facebook to hire a Program Support Specialist. This was Ms. Thoe's job title and she did not know of any other open position at Lakes and Pines with that title.

49.    On November 2, 2021, Ms. Thoe sent an email about the Facebook job posting to Jennifer Erdmann, an Administrative Assistant in the Community Services Department at Lakes Pines, asking "Should I be concerned?"

50.    Ms. Erdmann replied the same day, writing "[w]e and other departments were told to plan ahead for those staff that don't get vaccinated."

51.    Two days later, on November 4, 2021, Ms. Thoe met with a local pastor who completed Lakes and Pines' religious organization form on her behalf—affirming Ms. Thoe's beliefs and noting that she could not receive the COVID vaccine because it would violate her conscience. Ms. Thoe submitted this form to Lakes and Pines.

52.    No one from Lakes and Pines ever met or spoke with Ms. Thoe to evaluate her request or to discuss whether an accommodation could be found for her.

53.    Although Lakes and Pines ultimately filled out a form that purported to describe the "Interactive Process" it engaged in with Ms. Thoe, that form makes clear that in reality, no interactive process took place.

54.    Lakes and Pines' form lists three meetings as part of the supposed "Interactive Process." The first was that "Executive Director met with Moose Lake site on 09/28/21 (before paperwork was received)." As this notation indicates, this was a group meeting that discussed the policy generally, that did not deal with any specific accommodation request, and that occurred nearly a month before Ms. Thoe even submitted her accommodation request.

55.     The second meeting listed on Lakes and Pines' form is that "HR had conversation with Heather in regard to how the exemption can work (before paperwork was received)." This apparently refers to the telephone conversation in which Ms. Hamilton told Ms. Thoe that she had to submit the "Religious Organization Statement Form." That call did not include any discussion of the substance of Ms. Thoe's accommodation request.

56.     The third and final meeting listed on Lakes and Pines' form is that "HR met with Heather on 11/10/21 to begin the interactive process." Far from "beginning" any interaction, this was the meeting in which Ms. Hamilton informed Ms. Thoe that she was going to be fired. The meeting included no discussion of Ms. Thoe's exemption request nor any explanation of why her request was being denied.

57.     In fact, in that meeting Ms. Hamilton told Ms. Thoe that neither Ms. Hamilton nor the Human Resources Department had any meaningful role or authority in deciding religious accommodation requests, but that they were merely executing decisions made by Mr. Benes.

58.     In that meeting, Ms. Hamilton was emotionally distraught, apologized for the firing, and stated that she did not agree with Mr. Benes's decisions.

59.     Lakes and Pines officially terminated Ms. Thoe's employment because of its disfavor of her religious beliefs and its refusal to provide an available religious accommodation on November 19, 2021. Lakes and Pines continued to pay her until her official discharge on December 3, 2021.

60.     On December 4, 2021, the day after Ms. Thoe and the other Plaintiffs were formally discharged, Mr. Benes allowed all other Lakes and Pines employees to stop wearing masks at work.

61.     Ms. Thoe filed a timely charge of discrimination with the EEOC describing Lakes and Pines religious discrimination and refusal to accommodate her religious beliefs.

62.     On December 1, 2022, the EEOC issued a Notice of Right-to-Sue, and Ms. Thoe timely brought this action.

**<u>Anita Fett</u>**

63.     Ms. Fett was one of Lakes and Pines' longest-serving employees. Originally hired in 1990, her dates of employment at Lakes and Pines were approximately 1990-91, 1992-97, and from 2000 until November 2021.

64.     Ms. Fett's role at Lakes and Pines involved helping families and individuals find housing and apply for energy assistance and providing educational programming and awareness about Lakes and Pines' work.

65.     For her accomplishments, Ms. Fett regularly received positive reviews and feedback.

66.     From March 2020 until June 2020, Ms. Fett's job was fully remote. She did not physically come to Lakes and Pines' offices except at the request of clients. She conducted meetings over the phone, and only occasionally met with clients for housing inspections or in the office at their request.

67.     Ms. Fett is a Christian who is guided by the Bible, and whose faith has led her to oppose all vaccines.

68.     Specifically, Ms. Fett believes that it is wrong for her to receive vaccines because doing so would express a lack of trust in God's gift and design of her immune system.

69.     After Lakes and Pines announced its COVID vaccine mandate, on October 28, 2021, Ms. Fett requested a religious accommodation using the form provided by Lakes and Pines. In the form, Ms. Fett explained her beliefs and agreed to comply with Lakes and Pines' promised accommodations, which included weekly COVID testing, wearing a mask, appropriate social distancing, and "other preventive guidance."

70.     Ms. Fett did not complete Lakes and Pines' "Religious Organization Statement Form" in her original submission because, although she is Christian, she is not a member of or participant in any organized or institutional religious body.

71.     A few days after Ms. Fett submitted her request, she had a telephone call with Ms. Hamilton, Lakes and Pines' Human Resources Director, who told her that Lakes and Pines would not process Ms. Fett's accommodation request unless she submitted the Religious Organization Statement Form.

72.     On November 8, 2021, to comply with the Policy, Ms. Fett met with a local pastor who completed the form on her behalf and noted that Ms. Fett "has sincerely held beliefs based on Scripture and faith in God."

73.     No one from Lakes and Pines ever met or spoke with Ms. Fett to evaluate her request for an exemption, or to discuss whether an accommodation could be found for her.

74.     Instead, shortly after receiving Ms. Fett's exemption application, Lakes and Pines began actively looking for a worker to replace her.

75.   Although Lakes and Pines filled out a form that purported to "Describe the interactive process" it engaged in with Ms. Fett, that paperwork makes clear that in reality, no "interactive process" ever occurred.

76.   Lakes and Pines' form lists three meetings as part of the supposed "interactive process." The first meeting is described on the form as "Executive Director met with Moose Lake site on 09/28/21 (before paperwork was received)." As this notation indicates, this was a group meeting that discussed the policy generally, that did not deal with any specific accommodation request, and that occurred nearly a month before Ms. Fett even submitted her accommodation request.

77.   The second meeting is described on the form as "HR had conversation with Anita in regard to how the exemption can work (before paperwork was received)." This apparently refers to the telephone conversation during which Ms. Hamilton instructed Ms. Fett that she had to submit the "Religious Organization Statement Form."

78.   In the same conversation, Ms. Hamilton stated that if Ms. Fett's exemption request was accepted, Ms. Fett would have to start weekly COVID testing at her own expense. Ms. Fett confirmed she would comply with this requirement.

79.   The third and final meeting listed on Lakes and Pines' form is that "HR met with Anita on 11/10/21 to begin the interactive process." Far from "beginning" any interaction, in this meeting Ms. Hamilton informed Ms. Fett that she was going to be fired. In the meeting, there was no discussion of Ms. Fett's accommodation request, nor any explanation of why her request was being denied.

80.    Ms. Hamilton told Ms. Fett that neither Ms. Hamilton nor others in Human Resources had a meaningful role or authority in considering or granting requests for accommodation. Instead, they were merely executing Mr. Benes's decisions.

81.    In this November 10, 2021, meeting, Ms. Hamilton was emotionally distraught, apologized for Ms. Fett's discharge, and stated that she did not agree with Mr. Benes's decisions.

82.    Lakes and Pines terminated Ms. Fett's employment because of its disfavor of her religious beliefs and its refusal to provide an available religious accommodation on November 19, 2021. Lakes and Pines continued to pay her until her official discharge on December 3, 2021.

83.    On December 4, 2021, the day after Ms. Fett and the other Plaintiffs were formally discharged, Mr. Benes allowed all other Lakes and Pines employees to stop wearing masks at work.

84.    Ms. Fett filed a timely charge of discrimination with the EEOC describing Lakes and Pines' religious discrimination and failure to accommodate her religious beliefs.

85.    On December 1, 2022, the EEOC issued a Notice of Right-to-Sue, and Ms. Fett timely brought this action.

**Randi Bethel**

86.    Ms. Bethel was initially hired to work as a Program Specialist for Lakes and Pines through a temporary employment agency on November 18, 2019. In this position, Ms. Bethel helped individuals complete and submit applications for SNAP food benefits and MN Sure health benefits.

87.     In February 2020, Lakes and Pines hired Ms. Bethel as a regular full-time, employee continuing to perform her Program Specialist remotely.

88.     Throughout her employment at Lakes and Pines, Ms. Bethel received positive reviews and feedback regarding her performance.

89.     Ms. Bethel is a Christian whose faith has led her to oppose all vaccines.

90.     Ms. Bethel also believes in the sanctity of human life, that abortion is morally wrong, and that for her to support or benefit from it in any way would be a sin against God.

91.     After Lakes and Pines announced its COVID vaccination requirement, near the end of October 2021, Ms. Bethel requested a religious exemption using the form provided by Lakes and Pines. In her request, Ms. Bethel explained that her religious beliefs did not allow her to receive the currently available COVID vaccines because "while the vaccine may not contain fetal cells," "they were tested, developed, or produced from fetal cell lines" derived from "abortion cells." Ms. Bethel further stated that "the Holy Spirt will not allow me to benefit from any product derived from abortion or anything to do with abortion." To do otherwise "would be a strict violation of my faith."

92.     In the form, Ms. Bethel stated that she would comply with Lakes and Pines' promised accommodations, which included weekly COVID testing, wearing a mask, appropriate social distancing, and "other preventive guidance."

93.     No one from Lakes and Pines ever met with Ms. Bethel to evaluate her request for an exemption or to discuss whether an accommodation could be found for her.

94.     Instead, shortly after receiving Ms. Bethel's exemption application, Lakes and Pines began actively looking for a worker to replace her.

95.    Although Lakes and Pines filled out a form that purported to "Describe the interactive process" it engaged in with Ms. Bethel, that form makes clear that in reality, no "interactive process" ever occurred.

96.    Lakes and Pines' form lists two meetings as part of the supposed "Interactive Process." The first is that "Executive Director held meeting with all staff in September in regard to the mandate." This meeting took place nearly a month before Ms. Bethel even submitted her religious accommodation request, discussed the vaccine policy at a general level, and did not involve any consideration of any specific accommodation request.

97.    The second meeting listed on the form is that "HR met with Randi on 11/12/2021 to begin the interactive process." Far from "beginning" any interaction, in this meeting Ms. Hamilton informed Ms. Bethel that she was going to be fired. That meeting included no discussion of Ms. Bethel's exemption request nor any explanation of why her request was being denied.

98.    In this meeting, Ms. Hamilton also informed Ms. Bethel that neither Ms. Hamilton nor the Human Resources Department had any meaningful input or authority in considering or deciding whether to grant Ms. Bethel's request for religious accommodation. Instead, they were merely executing decisions made by Mr. Benes.

99.    In this meeting, Ms. Hamilton was emotionally distraught, apologized for the firing, and stated that she did not agree with Mr. Benes's decisions.

100.    After her meeting with Ms. Hamilton, Ms. Bethel met with Mr. Benes to discuss her exemption request and pending termination. Ms. Bethel asked Mr. Benes why her accommodation request was denied, however, he again gave no explanation. Despite

instituting a mandatory masking policy for all employees, Mr. Benes did not wear a mask during his meeting with Ms. Bethel.

101. Lakes and Pines finally terminated Ms. Bethel's employment because of its disfavor of her religious beliefs and its refusal to provide an available religious accommodation on November 19, 2021. Lakes and Pines continued to pay her until her official discharge on December 3, 2021.

102. On December 4, 2021, the day after Ms. Bethel and the other Plaintiffs were formally discharged, Mr. Benes allowed all other Lakes and Pines employees to stop wearing masks at work.

103. Ms. Bethel filed a timely charge of discrimination with the EEOC describing Lakes and Pines' religious discrimination and failure to accommodate her religious beliefs.

104. On December 1, 2022, the EEOC issued a Notice of Right-to-Sue, and Ms. Bethel timely brought this action.

**LAKES AND PINES' RELIGIOUS
DISCRIMINATION SERVED NO LAWFUL PURPOSE**

105. Lakes and Pines' discrimination against religious employees was unnecessary and pointless. Although Lakes and Pines' stated purpose in requiring COVID vaccination may have been to protect employes or clients, Lakes and Pines knew or should have known that it could accommodate religious objections to vaccination in a manner consistent with that goal.

106. Lakes and Pines claimed that it could not accommodate employees because of government mandates or orders related to COVID. However, no government mandate

or order superseded Title VII or the MHRA. No government mandate or order prevented Lakes and Pines from providing the religious accommodations requested by Plaintiffs.

107.    By the summer of 2021, it was well known that both vaccinated and unvaccinated individuals can be infected with COVID, and that both have similar COVID viral loads—which is a key measure of potential transmissibility.

108.    By October 2021, it was well established that vaccination against COVID did not prevent the transmission of the virus—or at minimum, that any difference from vaccination in the risk of transmission as uncertain at best.

109.    In October 2021, a study published in the *Lancet* and publicized by the U.S. Centers for Disease Control and Prevention demonstrated that COVID transmission rates are highly similar for vaccinated and unvaccinated people. Indeed, that study reported that unvaccinated individuals were slightly *less* likely to spread COVID to their close contacts.

110.    The minimal effect of vaccines on transmission was not surprising, since COVID vaccines were approved by regulatory authorities for the purpose of mitigating the effects and symptoms of infection in the vaccinated person him- or herself. No COVID vaccine has ever been approved to prevent transmission of COVID from an infected individual to another individual.

111.    Nor did pre-approval testing of COVID vaccines involve any significant investigation of whether they could prevent or slow transmission.

112.    Since the original regulatory approval of COVID vaccines, all the vaccines have received multiple updates to their authorizations for use, primarily to expand the ages indicated and to add approval for use as a booster. But to date, none of these updates have

added an indication or use for any COVID vaccine related to stopping, slowing, or otherwise affecting the transmission of COVID from the vaccinated person.

113. No manufacturer of a COVID vaccine has ever made an official claim that any such vaccine could affect the transmission of COVID, because doing so would be unlawful.

114. By contrast, when Lakes and Pines announced its vaccine mandate for employees, it also announced an accommodation plan that demonstrated Lakes and Pines' knowledge of alternative ways to slow the spread of the virus. Specifically, Lakes and Pines knew that unvaccinated individuals could perform self-testing on a regular basis (such as weekly or every few days).

115. Indeed, if unvaccinated individuals engaged in regular testing, along with other commonsense precautions, their likelihood of transmitting the virus was *lower* than that of vaccinated individuals.

116. In the fall of 2021, the CDC's website explained that self-testing can be used to detect COVID and prevent transmission "by anyone who is symptomatic regardless of their vaccination status." It added that "[u]nvaccinated people without COVID-19 symptoms can also use self-tests, especially if they were potentially exposed to someone with COVID-19."

117. The CDC specifically endorsed "serial testing" as a means to prevent the spread of COVID. The CDC explained that:

> Serial testing is when a person tests themselves multiple times for COVID-19 on a routine basis, such as every few days. By testing more frequently,

you might detect COVID -19 more quickly and could reduce the spread of infection.

118.   Lakes and Pines was not just aware of regular testing as an alternative to COVID vaccination, it actually used it in other contexts. Specifically, Lakes and Pines granted some employees medical exemptions to vaccination that were conditional on the employees submitting regular test results.

119.   Both self-tests and laboratory testing for COVID have been available in Minnesota and other states, free of charge, including in the fall of 2021.

120.   For vaccinated employees, Lakes and Pines did not require regular testing or other common procedures such as masking.

121.   In sum, at the time Lakes and Pines denied Plaintiffs' requests for religious accommodation and fired them, it knew or should have known that unvaccinated employees who followed Lakes and Pines' own proposed accommodation protocols were no greater threat to spread COVID in the workplace than vaccinated employees would be and, in fact, would have been significantly less likely to spread COVID to coworkers or clients than vaccinated individuals who did not engage in regular testing and other protocols.

122.   That was especially true of employees like Plaintiffs, who could have performed their jobs remotely. Ms. Bethel was hired into a fully-remote position, as reflected in her hiring paperwork. Ms. Fett and Ms. Thoe had successfully performed their jobs remotely for three months, and could have continued doing so with periodic visits to

the workplace, during which they would have complied with Lakes and Pines proposed accommodations.

## COUNT I
**Religious Discrimination, Failure to Interact, and Failure to Accommodate Religious Beliefs, Practices, or Observances in Violation of Title VII of the Civil Rights Act of 1964**

123.  Plaintiffs re-allege each of the foregoing paragraphs.

124.  Lakes and Pines is an "employer" within the meaning of 42 U.S.C § 2000e(b).

125.  Plaintiffs were "employees" within the meaning of 42 U.S.C § 2000e(f).

126.  Title VII prohibits discrimination on the basis of religion, *id*. § 2000e-2, and requires employers to reasonably accommodate their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

127.  Plaintiffs were employees of Lakes and Pines who held sincere religious beliefs that prevented them from receiving any COVID vaccine.

128.  Plaintiffs informed Lakes and Pines of the conflict between their religious beliefs and the company's vaccine mandate.

129.  Title VII requires that requests for reasonable accommodation be considered based on an employees' individual, particularized circumstances, and that any claim of undue hardship by the employer be assessed on a case-by-case basis rather than through a rote or blanket application of company policy, including vaccine mandates.

130.  When an employee requests an accommodation, Title VII requires that employers consider the request in good faith and/or engage in a good faith interactive

process whereby the employer and employee work together, exchanging information, with the goal of identifying an effective and reasonable accommodation.

131.   Lakes and Pines violated Title VII by discriminating against Plaintiffs on the basis of religion, including through its policies and practices that discriminated against employees who sought or attempted to seek religious accommodations from Lakes and Pine's COVID vaccine mandate.

132.   Lakes and Pines violated Title VII by its failure to interact with Plaintiffs, by its failure to consider reasonable accommodations that were available that would have allowed Plaintiffs to continue to work without any undue hardship to Lakes and Pines' business, and also by its failure to engage in good faith to determine if a reasonable accommodation was available that could eliminate the conflict between Lakes and Pines' COVID vaccine mandate and Plaintiffs' religious beliefs, practices, or observances.

133.   Lakes and Pines' accommodation process violated Title VII because the process was disingenuous and was designed to refuse accommodations.

134.   Lakes and Pines' process for considering accommodation process was pretextual. It was designed to appear to consider accommodations, but it did not actually do so.

135.   Lakes and Pines designed its disingenuous accommodation process because of Mr. Benes' animus toward Plaintiffs and other individuals whose religious beliefs prevented COVID vaccination.

136.   Lakes and Pines violated Title VII by its failure to reasonably accommodate Plaintiffs' sincerely held religious beliefs, practices, or observances that conflicted with

Lakes and Pines' COVID vaccine mandate, even though such an accommodation would not have created an undue hardship as defined in Title VII.

137.    Lakes and Pines engaged in religious discrimination and adverse employment actions against Plaintiffs, without justification, at the explicit request of Mr. Benes.

138.    Lakes and Pines engaged in religious discrimination against Plaintiffs by designing unlawful policies and practices that were designed to deter employees from seeking religious accommodations related to COVID vaccination.

139.    Even though Plaintiffs followed Lakes and Pines' exemption process and agreed to abide by Lakes and Pines' proposed accommodations, Lakes and Pines did not consider their exemption requests in an individualized way. Instead, it immediately began searching for Plaintiffs' replacements before the exemption process was complete, or (for some Plaintiffs) before the exemption process was even officially started.

140.    Lakes and Pines' accommodation process violated Title VII because it imposed requirements beyond those allowed by Title VII, including that employees obtain a third party's certification of employee beliefs.

141.    Lakes and Pines' proposed reasonable accommodations, which Plaintiffs agreed to abide by, would have allowed Plaintiffs to safely work for Lakes and Pines, unvaccinated, without any undue hardship to Lakes and Pines' business.

142.    Had Lakes and Pines interacted with Plaintiffs in good faith about their requests, or implemented the accommodation it had proposed, the company would have quickly realized this was true.

143.    The only hardship to Lakes and Pines' business related to Plaintiff's unvaccinated status was the self-inflicted and irrational choice by Lakes and Pines to terminate Plaintiffs without cause.

144.    The necessity of finding replacements for Plaintiffs after it fired them caused a far more significant hardship to Lakes and Pines' business than the nonexistent, imaginary hardship that would have been caused by Plaintiffs' unvaccinated.

145.    Lakes and Pines violated Title VII by terminating Plaintiffs' employment based on Mr. Benes' or others' disfavor of their religious beliefs regarding COVID vaccines.

146.    Lakes and Pines violated Title VII by discriminating on the basis of religion in the design and implementation of its process for requesting and considering requests for religious accommodation.

147.    Lakes and Pines violated Title VII by its failure to consider, in good faith, potential reasonable accommodations that would have eliminated the conflict between Lakes and Pines' COVID vaccine Policy and Plaintiffs' religious beliefs.

148.    Lakes and Pines violated Title VII by its failure to provide available reasonable accommodations that would have eliminated the conflict between Lakes and Pines' COVID vaccine Policy and Plaintiffs' religious beliefs and that would not have caused an undue hardship.

149.    Because of Lakes and Pines' unlawful actions, Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including

front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorneys' fees in excess of $50,000.

### COUNT II
**Religious Discrimination, Failure to Interact, and**
**Failure to Accommodate Religious Beliefs, Practices, or Observances**
**in Violation of the Minnesota Human Rights Act**

150.    Plaintiffs re-allege each of the foregoing paragraphs.

151.    Lakes and Pines is an "employer" within the meaning of Minn. Stat. § 363A.03, subd. 16.

152.    Plaintiffs were "employees" within the meaning of Minn. Stat. § 363A.03, subd. 15.

153.    The Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* (the "MHRA"), prohibits discrimination on the basis of religion and requires employers to reasonably accommodate their employees' sincerely held religious beliefs.

154.    Plaintiffs were employees of Lakes and Pines who held sincere religious beliefs that prevented them from receiving any COVID vaccine.

155.    Plaintiffs informed Lakes and Pines of the conflict between their religious beliefs and the company's vaccine mandate.

156.    The MHRA requires that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship by the employer be assessed on a case-by-case basis rather than through a rote or blanket application of company policy, including vaccine mandates.

157.    When an employee requests an accommodation, the MHRA requires that employers consider the request in good faith and/or engage in a good-faith interactive process whereby the employer and employee work together, exchanging information, with the goal of identifying an effective and reasonable accommodation.

158.    Lakes and Pines violated the MHRA by discriminating against Plaintiffs on the basis of religion, including through its policies and practices that discriminated against employees who sought religious accommodations from Lakes and Pines COVID vaccine mandate.

159.    Lakes and Pines violated the MHRA by its failure to interact with Plaintiffs, by its failure to consider reasonable accommodations that were available that would have allowed Plaintiffs to continue to work without any undue hardship to Lakes and Pines' business, and also by its failure to engage in good faith to determine if a reasonable accommodation was available that could eliminate the conflict between Lakes and Pines' COVID vaccine mandate and Plaintiffs' religious beliefs, practices, or observances.

160.    Lakes and Pines' accommodation process violated the MHRA because its process was disingenuous and was designed to refuse accommodations.

161.    Lakes and Pines' process for considering accommodation process was pretextual. It was designed to appear to consider accommodations, but it did not actually do so.

162.    Lakes and Pines designed its disingenuous accommodation process because of Mr. Benes' animus toward Plaintiffs and other individuals whose religious beliefs prevented COVID vaccination.

26

163.   Lakes and Pines also violated the MHRA by its failure to reasonably accommodate Plaintiffs' sincerely held religious beliefs, practices, or observances that conflicted with Lakes and Pines' COVID vaccine mandate and that would not have created an undue hardship as defined in the MHRA.

164.   Lakes and Pines engaged in religious discrimination and adverse employment actions against Plaintiffs, without justification, at the explicit request of Mr. Benes.

165.   Lakes and Pines engaged in religious discrimination against Plaintiffs by designing unlawful policies and practices that were designed to deter employees from seeking religious accommodations related to COVID vaccination.

166.   Plaintiffs agreed to Lakes and Pines' proposed accommodations, including measures that Lakes and Pines knew were effective and useful in other circumstances—such as weekly testing, social distancing, and mask wearing.

167.   Lakes and Pines did not respond and did not consider Plaintiffs' requests in an individualized way, but instead applied a one-size-fits-all rule rejecting exemption requests.

168.   Lakes and Pines' proposed accommodation would have allowed unvaccinated individuals, including Plaintiffs, to safely work for Lakes and Pines without any undue hardship to Lakes and Pines' business.

169.   Had Lakes and Pines interacted with Plaintiffs in good faith about their requests, it would quickly have realized that this was true.

170.    Even though Plaintiffs followed Lakes and Pines' exemption process and agreed to abide by Lakes and Pines' proposed accommodations, Lakes and Pines did not consider their exemption requests in an individualized way. Instead, it immediately began searching for Plaintiffs' replacements before the exemption process was complete, or (for some Plaintiffs) before the exemption process was even officially started.

171.    Lakes and Pines' accommodation process violated the MHRA because it imposed requirements beyond those allowed by The MHRA, including that employees obtain a third party's certification of employee beliefs.

172.    Lakes and Pines' proposed reasonable accommodations, which Plaintiffs agreed to abide by, would have allowed Plaintiffs to safely work for Lakes and Pines, unvaccinated, without any undue hardship to Lakes and Pines' business.

173.    Had Lakes and Pines interacted with Plaintiffs in good faith about their requests, or implemented the accommodation it had proposed, the company would have quickly realized this was true.

174.    The only hardship to Lakes and Pines' business related to Plaintiff's unvaccinated status was the self-inflicted and irrational choice by Lakes and Pines to terminate Plaintiffs without cause.

175.    The necessity of finding replacements for Plaintiffs after it fired them caused a far more significant hardship to Lakes and Pines' business than the nonexistent, imaginary hardship that would have been caused by Plaintiffs' unvaccinated.

176.   Lakes and Pines violated the MHRA by terminating Plaintiffs' employment based on Mr. Benes' or others' disfavor of their religious beliefs regarding COVID vaccines.

177.   Lakes and Pines violated the MHRA by discriminating on the basis of religion in the design and implementation of its process for requesting and considering requests for religious accommodation.

178.   Lakes and Pines violated the MHRA by its failure to consider, in good faith, potential reasonable accommodations that would have eliminated the conflict between Lakes and Pines' COVID vaccine Policy and Plaintiffs' religious beliefs.

179.   Lakes and Pines violated the MHRA by its failure to provide available reasonable accommodations that would have eliminated the conflict between Lakes and Pines' COVID vaccine Policy and Plaintiffs' religious beliefs and that would not have caused an undue hardship.

180.   Because of Lakes and Pines' unlawful actions, Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, treble damages, punitive damages, statutory penalties, and attorneys' fees in excess of $50,000.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Lakes and Pines and that this Court:

A. Adjudge, decree, and declare that Lakes and Pines is liable to Plaintiffs for their actual damages in amounts to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

B. Order and enjoin that Lakes and Pines grant exemptions from COVID vaccination to Plaintiffs and reinstate the employment status of any Plaintiff who requests it;

C. Award Plaintiffs their costs, damages, reasonable attorneys' fees, prejudgment interest, and any other relief permitted by statute; and

D. Award such other or further relief as the Court may deem necessary, proper, just or equitable.

Dated: February 28, 2023

**CROSSCASTLE PLLC**

By: ___s/Samuel W. Diehl___
    Samuel W. Diehl (#388371)
    Nicholas J. Nelson (#391984)
333 Washington Avenue N.
Ste 300-9078
Minneapolis, MN 55401
P: (612) 429-8100
F: (612) 234-4766
Email:   sam.diehl@crosscastle.com
          nicholas.nelson@crosscastle.com

**ATTORNEYS FOR PLAINTIFFS**

4882-0917-7168, v. 5